**UNITED STATES of America, Plaintiff,**

**v.**

**Rufus A. CUNNINGHAM, Defendant.**

**No. 94 CR 254.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 26, 1995.

Camille B. Conway, Lynn C. Hartfield, Federal Defender Program, Chicago, IL, for defendant.

Diane MacArthur, U.S. Attorney's Office, Chicago, IL, for U.S.

### MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

On March 23, 1995, the Federal Grand Jury for the Northern District of Illinois returned a two count indictment against defendant Rufus A. Cunningham. The indictment alleges that Cunningham, a former United States Postal Service employee, violated 18 U.S.C. § 1703(a) by unlawfully secreting, detaining and delaying the United States mail. Specifically, Count I alleges that beginning on or about October 17, 1987, and continuing until on or about September 9, 1991, Cunningham unlawfully secreted, detained and delayed approximately 219 pieces of United States mail designated for delivery on or about October 17, 1987, on Route 5005 in Cicero. Count II alleges that on or about March 23, 1988, and continuing until September 9, 1991, defendant unlawfully secreted, detained and delayed approximately 549 pieces of United States mail designated for delivery on or about March 23, 1988, on Route 5029 in Cicero. Defendant has moved to dismiss the entire indictment arguing that both counts are barred by the statute of limitations. For the reasons set forth below, the defendant's motion is granted and the indictment is dismissed.

### DISCUSSION

The parties agree that the five year statute of limitations contained in 18 U.S.C. § 3282 is applicable to the alleged violations of Section 1703(a). Section 3282 provides that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted ... for any offense ... unless the indictment is found ... within five years next after such offense shall have been committed." Defendant argues that because the indictment was returned on March 23, 1995, it must charge a violation occurring after March 23, 1990, in order to charge an indictable offense. Here,

the two counts of the indictment allege that the pieces of mail in question were designated for delivery on or about October 17, 1987, and March 23, 1988. Therefore, according to defendant, the indictment was returned outside the statute of limitations period and must be dismissed.

The government argues that a violation of 18 U.S.C. § 1703(a) is a "continuing offense," which began for Count I on or about October 17, 1987, and for Count II on or about March 23, 1988, and continued until on or about September 9, 1991. Therefore, according to the government, the statute of limitations did not begin to run until September 9, 1991, defendant's last day as a postal employee and, presumably, the date on which his duty to deliver the mail ended.[1]

■■■ As a general rule, statutes of limitation normally begin to run when the crime is complete. *Pendergast v. United States,* 317 U.S. 412, 418, 63 S.Ct. 268, 270–71, 87 L.Ed. 368 (1943). A criminal offense is generally complete and the limitations period begins to run when each element of the offense has occurred. Those crimes labeled as continuing offenses, however, function as exceptions to this general rule. *United States v. Beard,* 713 F.Supp. 285, 290 (S.D.Ind.1989). Such exceptions should not be created lightly, for by enacting 18 U.S.C. § 3282 Congress "has declared a policy that the statute of limitations should not be extended 'except as otherwise expressly provided by law.' " *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970) (quoting 18 U.S.C. § 3282).

■■■ As noted in *Toussie,* these principles indicate that the doctrine of continuing offenses should be applied only in limited circumstances since "the tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term." *Id.* This does not mean, however, that a particular

offense should never be construed as continuing. It means only that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one. *Id.*

In determining whether the continuing offense exception is applicable in the instant case, this court must be ever mindful of the Supreme Court's mandate that this exception must be interpreted narrowly, because a statute of limitations is designed to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has intended to punish, and that criminal limitation statutes are to be liberally construed in favor of repose. *Id.* at 114–115, 90 S.Ct. at 859–60.

At the outset, the court notes that there are no reported decisions that have expressly addressed the question of whether Section 1703(a) is a continuing offense and that the act itself does not contain an express provision that it is a continuing offense. The government nonetheless argues that Section 1703(a) satisfies either prong of the *Toussie* exception. Specifically, the government argues that Section 1703(a) proscribes the acts of secreting, detaining and delaying mail by a postal employee, and that these actions are by definition continuing in nature. Therefore, according to the government, the explicit language of the statute contemplates a continuing offense.

Additionally, the government argues that Congress' intent to treat Section 1703(a) as a continuing offense is evidenced by the way in which it chose to separate into different statutes the various means by which postal employees may interfere with the delivery of mail. According to the government, prior to 1948, a single statutory section prohibited the two distinctly dissimilar acts of delaying the mail and embezzling the mail. In 1948, Con-

---

1. Section 1703(a) provides:
   Whoever, being a Postal Service officer or employee, unlawfully secretes, destroys, detains, delays, or opens any letter, postal card, package, bag or mail entrusted to him or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any carrier or other employee of the Postal Service, ..., shall be fined under this title or imprisoned not more than five years, or both.

gress separated the two provisions and created two statutory sections, Section 1703 for delaying, secreting and destroying the mail, and Section 1709 for embezzlement of mail. The government argues that the distinction between the two sections is significant because of the differences in the natures of a Section 1703 and a Section 1709 offense. Secreting, detaining and delaying the mail, according to the government, indicates action occurring over time. Thus, the government maintains that a postal employee's interference with the mail continues as long as the mail has not reached its intended destination or so long as the individual has a duty to deliver it. In contrast, the government argues that embezzlement implies an act that occurs the moment the postal employee intentionally removes the mail from the mail system.

The court disagrees. First, as defendant points out, there is nothing in the legislative history to either section that indicates Congress' intent in separating theft of mail from delay of mail had anything to do with the continuing offense doctrine. Moreover, if Congress had intended by such a separation to create a continuing offense, it could have easily done so by explicitly stating that the offense is continuous in nature. For example, 18 U.S.C. § 3284 provides that concealment of a bankrupt's assets "shall be deemed to be a continuing offense ... and the period of limitations shall not begin to run until such final discharge or denial of discharge." Likewise, the Foreign Agents' Registration Act, 22 U.S.C. § 618(e) provides that "failure to file any such registration statement or supplements thereto as required by [this title] shall be considered a continuing offense for as long as such failure exists, notwithstanding any statute of limitations or other statute to the contrary." Thus, it is clear that when Congress has intended an offense to be continuing, it explicitly so states that intent. Because Congress has not included such explicit continuing offense language in Section 1703(a), the court concludes that the first prong of the *Toussie* test is not met.

Moreover, the government's argument that Congress' separation of the crime of embezzlement of mail evidences an intent to make Section 1703 a continuing offense fails for a more basic reason. Had Congress intended to separate the continuing offenses from the discrete offenses when it enacted Section 1709 for embezzlement, it would have included destruction of mail, which is clearly a discrete offense, in the latter section. Instead, however, destruction of mail is included in Section 1703(a). It is hard to imagine a crime any more discrete or less continuing than destruction of mail. Yet, there it is, contained within the very section that the government argues must be construed as continuing in nature. This inclusion cannot be reconciled with the government's argument and compels its rejection.

Finally, the court also rejects the government's argument that the actions proscribed by Section 1703(a) are by definition continuing in nature. Although it is true that the acts of secreting, delaying and detaining could be considered continuous, as noted above the section also proscribes opening and destroying any letter or postal card. Both of those actions can only be described as discrete. Therefore, at most, only some of the actions proscribed by this section could arguably be construed as continuous, while others must be construed as discrete.

Additionally, the court cannot agree with the government's assertion that the statute of limitations should begin to run only when the postal carrier terminates his employment with the Post Office. As defendant notes, no legal support is cited for this proposition, and the logic behind it is unclear. The offense occurs while the employee is employed by the Postal Service. Apparently, the government believes that the employee's duty to right his wrong ends when he leaves the Postal Service employment. This argument is unsupported by the statute and makes no sense. Surely the government would not contend that a postal carrier would not be guilty of violating Section 1703 if he were still employed by the Postal Service at the time the offense was discovered. Separation from the Service simply has nothing to do with the commission of the crime.

Finally, as defendant points out, in those cases where courts have deemed offenses to be continuing in nature, both the harm to the

victim and the defendant's acts are continuing. A prime example is kidnapping, where the offender continues to violate the law and harm the victim every day that the victim is not released. With respect to the crime at issue, the delay of the mail occurs at the time that the employee removes it from the system. It cannot be deemed ongoing. Indeed, this case is much more like *Toussie,* in which the Court held that the offense of failing to register for the draft was not a continuing offense, despite a regulation published under the act which provided that "[t]he duty of every person subject to registration ... shall continue at all times...." The Court reviewed the specific language of the act in question, as well as its history, and despite the regulation, determined that the violation occurs at the time the persons fails to register when first required to do so. *Toussie,* 397 U.S. at 122, 90 S.Ct. at 864. Thus, in Toussie's case, the crime was completed when he failed to register within five days of his eighteenth birthday. Here, the offenses were completed when the items were first removed from the system, not when Cunningham's employment ended years later. See also, *Beard,* 713 F.Supp. 285 (crime of conversion completed upon the initial interference with the owner's interest).

For all the reasons set forth above, the court concludes that the actions proscribed by Section 1703(a) are not continuing offenses, and that the five year statute of limitations set out in 18 U.S.C. § 3282 begins running at the moment the postal employee fails to deliver the mail on its designated date, not upon the date that the employee ceases to be employed by the Postal Service. Because both Counts I and II indict the defendant for acts that were completed more than five years before the date of the indictment, both counts must be dismissed. Accordingly, the indictment is dismissed in its entirety.

### CONCLUSION

For the reasons set forth above, defendant's motion to dismiss the indictment is granted.